No. 36,002

The Wheeler, Kelly & Hagny Investment Company, *Appellee,* v. Mary C. Curts, *Appellant.*

(147 P. 2d 737)

Opinion filed April 8, 1944.

*Robert Stone,* of Topeka, argued the cause, and *James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, were on the briefs for the appellant.

*Oliver A. Witterman,* of Wichita, argued the cause, and *Wilbur H. Jones,* of Wichita, was on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action upon a written contract for the sale of real property. A trial by the court resulted in judgment for plaintiff. Defendant has appealed and contends that the court erred in excluding testimony of a prior oral agreement respecting the consideration to be paid for the property.

The petition, filed April 16, 1942, alleged that on July 15, 1941, plaintiff and defendant entered into a written contract, a copy of which was attached, by the terms of which plaintiff agreed to sell to defendant certain real property in Wichita and convey the same by warranty deed and furnish abstract showing merchantable title, and defendant agreed to purchase the property and to pay as the purchase price therefor the sum of $1,000 in payments as follows: $25 August 15, 1941, and $25 on the 15th day of each month for each of four months thereafter, and to pay the balance of the purchase price, $875, on the 15th day of January, 1942, and to pay on the date of the agreement all delinquent taxes due on the property,

except for 1940, and to pay those at a later date, and to pay future taxes. The written agreement provided for the execution of the papers and the deposit of them with a designated trust company, where the payments were to be made, and it recited: "This agree-. ment in substitution to any prior agreement between the parties hereto." The petition alleged that defendant had made the five payments of $25 each and paid the delinquent taxes, except for 1940, but had failed, neglected and refused to pay the $875 due on January 15, 1942, and the taxes due for 1940 and subsequent. The contract provided that if defendant failed to make any of his payments provided in the contract for a period of thirty days, then defendant's rights under the contract should be canceled and payments previously made should be retained by the first party by way and in lieu of rent and as liquidated damages. The prayer was that the court determine the amount due plaintiff under the contract; that the defendant be given a time within which to pay the amount found due, and in default thereof the rights under the contract be forfeited as provided therein, and that plaintiff have costs and other proper relief.

The answer admitted the relation of the parties and that they entered into the contract, a correct copy of which was attached to the petition. Defendant denied that she owed anything under the contract and alleged that she purchased the property in 1925 and since then has occupied the place as her home; that in 1926 she placed a mortgage thereon for $3,500 to plaintiff, which was sold to the Royal Union Life Insurance Company; that in 1931 the mortgage was reduced $500 and a new mortgage given to the insurance company; that the insurance company became insolvent, and that the mortgage last above mentioned was purchased by the plaintiff "for a nominal sum"; that thereafter plaintiff instituted foreclosure proceedings against defendant; that pending that action plaintiff offered and agreed to settle said indebtedness for the sum of $1,000; that the agreement was made about December, 1933, and renewed about February, 1936, and that since then defendant has made plaintiff thirty-six payments of $25 each and one of $50; that the agreement was thereafter reduced to writing on July 15, 1941, and is the agreement set out in plaintiff's petition; that plaintiff also received from defendant $100 insurance collected for windstorm damage to the premises, and that the amount due plaintiff has been fully paid.

The reply was a general denial.

The trial was in April, 1943. Evidence on plaintiff's behalf sustained the allegations of its petition. Defendant and her son, who transacted some of her business, gave testimony substantially as follows: That when plaintiff was foreclosing the mortgage in 1933 defendant asked one of plaintiff's officers if plaintiff would settle the indebtedness for $1,000, and he smiled and said: "Bring in the money." There was no evidence that the money was taken in. The witness further testified that the officers of plaintiff expressed dissatisfaction with the state's moratorium policy and also with the redemption period which defendant was exercising and stated that any arrangement would have to be of a nature that would preclude the possibility of defendant taking advantage of such statutes. On March 2, 1936, some kind of a contract was signed between them. This contract was not pleaded, nor was it introduced in evidence, hence its specific terms are not shown by the record. It is spoken of as "the $2,500 purchase contract." Defendant's son testified that it was arranged in that sum for the purpose of safeguarding plaintiff against the possibilities of a moratorium or redemption period. The testimony is that under that contract $50 was paid on March 2 and later $25 practically each month to December, 1938. Nothing was paid thereafter until July, 1941, when plaintiff's representative went to the premises, inquired what defendant was going to do, and spoke of putting her out of the house. Conferences were then had and the contract of July 15, 1941, was drawn. This, as we have seen, provided for the payment of $1,000 in five payments of $25 and one payment of $875, and specific dates for those payments were specified in the contract, and the contract specifically provided that it was in substitution of previous contracts between the parties with respect to the property. Defendant and her son testified that their understanding was that the $1,000 mentioned in the contract of July, 1941, to be paid thereafter, was the same $1,000 mentioned in 1933 and contained within the $2,500 written contract of 1936, most of which had been paid by the $25 payments through 1936, 1937 and 1938. Plaintiff objected to this testimony as it was being given, but the court reserved its ruling until defendants were through, when the court held:

"This evidence about payment made prior to the date the contract was entered into can't be considered by the court as payments on this contract."

Accordingly, judgment was rendered for plaintiff. Defendant filed a motion for a new trial, in which it was contended the court

erred in rejecting the testimony. The appeal is from the order of the court overruling the motion for a new trial.

We think the ruling of the trial court was correct. We take note of the fact that defendant made no effort to reform the contract or to have it set aside because of fraud, mutual mistake, or for any other reason. Defendant admits executing the contract and making payments under it, and yet says it is not the contract made by the parties. We think that contention cannot be sustained. (See *Hazelton v. Chaffin*, 109 Kan. 175, 197 Pac. 870, and the many cases cited, p. 177; *Radebaugh v. Dillon*, 119 Kan. 492, 240 Pac. 406; *Tong v. McArthur*, 121 Kan. 870, 250 Pac. 262; *Stanley v. Blair*, 137 Kan. 469, 21 P. 2d 311.) Appellant argues that the consideration for a written contract has always been open to inquiry, that this does not vary the terms of the contract but goes to show only the facts which induced the parties to enter into the contract, citing *Roseman v. Nienaber*, 100 Kan. 174, 166 Pac. 491; *Rice v. Rice*, 101 Kan. 20, 165 Pac. 799; *Shields v. Johnson*, 124 Kan. 155, 257 Pac. 926, and *MacLorinan v. Finley*, 124 Kan. 637, 261 Pac. 587. Without taking space to analyze those cases we think it clear that each of them presents a different situation than is here involved. In *Trice v. Yeoman*, 60 Kan. 742, 57 Pac. 955, it was held:

"Parol evidence of an agreement consisting of mere oral promises made previously or concurrently with the execution of a written contract of sale of land is inadmissible to charge the vendee with the payment of more than the expressed consideration, when the amount to be paid plainly appears from the face of the instrument." (Syl.)

In *Milich v. Armour*, 60 Kan. 229, 56 Pac. 1, it was held:

"As a general rule all prior oral negotiations are deemed to be merged in a written agreement, and the terms of such agreement cannot be contradicted, altered, added to or varied by parol proof.

"An exception to the rule is a unilateral admission, such as an ordinary receipt, or the mere acknowledgment of the receipt of purchase-money in a conveyance, which ordinarily is not conclusive upon the parties as to the consideration stated; but when it appears from the writing that the statement of consideration is contractual, and not merely matter of recital, it is not open to contradiction by oral proof." (Syl. ¶¶ 1, 2.)

A lengthy annotation on this point appears in 100 A. L. R. 17, where it is said:

"It has been well said that 'the rule permitting the true consideration of written contracts to be inquired into by parol evidence does not apply where the statement in the contract as to the consideration is more than a mere receipt or acknowledgment of payment, and is of a contractual nature.'"

On this point many authorities are cited.

Here the parties had been dealing for several years with respect to this property, and "in substitution" of all previous agreements reduced to writing what was still to be done. We think defendant was not entitled to show that the amount to be paid under this written contract had been paid before the contract was written.

In 32 C. J. S. 784, 830 and 832, the applicable parol or extrinsic evidence rule affecting writing is well stated as follows:

"It is a general rule that parol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict judicial or official records or documents, or written instruments which dispose of property, or are contractual in nature and which are valid, complete, unambiguous, and unaffected by accident or mistake. This rule, which is known as the parol evidence rule, is one of substantive law and not merely one of evidence; and it obtains in equity as well as at law." (Sec. 851.)

"The parol evidence rule applies to written contracts for the sale or exchange of realty or personalty, and to such provisions as those relating to price, time and mode of payment, and time and place of delivery." (Sec. 910a.)

"The statement in a contract of sale as to the price paid or to be paid by the purchaser is an essential part of the contract, and hence it cannot be varied or contradicted by parol." (p. 832, "Price.")

Many cases are cited in support of the text. Our decisions previously decided are in accord. See, also, *Van Fossan v. Gibbs,* 91 Kan. 866, 139 Pac. 174; *Samuelson v. Palmer,* 96 Kan. 587, 152 Pac. 627; *Thomas v. Citizens State Bank,* 129 Kan. 540, 283 Pac. 507; *Lanphear v. McLean,* 136 Kan. 266, 10 P. 2d 889.

We find no error in the record. The judgment of the court below is affirmed.