## PARTSMASTER, INC.

### v.

**Roy L. JOHNSON, Theodore Jarman, and Repair and Maintenance Products Corporation, Ray C. Richardson and Lawrence Zoch.**

Civ. A. No. 79–2067.

United States District Court,
D. Kansas.

July 26, 1979.

418

John J. Jurcyk, Jr., J. Nick Badgerow, Kansas City, Kan., Edward E. Schmitt and Truman K. Eldridge, Jr., Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Mo., Larry R. Margolies, Dallas, Tex., Edwin S. Tobolowsky, Tobolowsky & Schlinger, Dallas, Tex., for plaintiff.

James R. Borthwick, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., Lynn R. Johnson, Mark D. Johnson and Schnider, Shamberg & May, Kansas City, Kan., James Crabtree, Jeffrey L. Easterday, Schnider, Shamberg & May, Shawnee Mission, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This case is now before the Court upon plaintiff's motion for a preliminary injunction. A hearing on the matter was held on July 20, 1979, at which time both sides presented evidence. Having carefully considered the testimony, exhibits, briefs and arguments of counsel the court makes the following findings and order.

We note initially the standards which govern requests for preliminary injunctions as they were recently set out by Judge Rogers in *Hiett v. Brier,* No. 78–4291 (D.Kan., November 7, 1978):

> "In determining whether to grant a Rule 65 motion, this court has traditionally considered the four factors set forth in Wright & Miller's FEDERAL PRACTICE AND PROCEDURE, § 2948, pp. 430–431 (1973):
>
> (1) the significance of the threat of irreparable harm to the plaintiff if the injunction is not granted;
>
> (2) the state of the balance between this harm and the injury that granting the injunction would inflict on defendant;
>
> (3) the probability that plaintiff will succeed on the merits; and
>
> (4) the public interest.

Of course, the weighing of these various factors in the process of determining whether injunctive relief should be granted is a matter that is within the district judge's discretion. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1185 (10th Cir. 1975).

In considering a motion such as the one before us, the court must keep in mind that preliminary injunctive relief is an 'extraordinary' and 'drastic' remedy. *Checkers Motors Corp. v. Chrysler Corp.,* 405 F.2d 319, 323 (2d Cir. 1969), *cert. denied* 394 U.S. 999 [89 S.Ct. 1595, 22 L.Ed.2d 777] (1969); *Holiday Inns of America, Inc. v. B & B Corporation,* 409 F.2d 614, 618 (3d Cir. 1969). Further, the burden of persuasion in such a matter is upon the plaintiff. *Automated Market-*

*ing System, Inc. v. Mastin,* 467 F.2d 1181, 1183 (10th Cir. 1972); *Crowther v. Seaborg,* 415 F.2d 437, 439 (10th Cir. 1969). Only a *clear showing* of entitlement to relief will be sufficient. *Penn v. San Juan Hospital, Inc., supra,* 528 F.2d at 1185; *Garlock, Inc. v. United Seal, Inc.,* 404 F.2d 256 (6th Cir. 1968)."

Plaintiff, through its Dyna Systems Division, is engaged in the distribution and sale of maintenance products including industrial fasteners and related equipment. Defendant Repair and Maintenance Products Corporation (RAMPCO) is a distributor of similar products and is a competitor of plaintiff. Defendant Johnson was former Division Sales Manager of plaintiff. He has been employed by RAMPCO as manager of its sales department since January, 1979. Defendants Zoch and Richardson were formerly sales representatives of plaintiff and now sell similar products for RAMPCO.

Johnson, Zoch and Richardson all had contracts with plaintiff which contained certain post-employment restrictive covenants. Zoch and Richardson agreed not to solicit or sell products similar to those of Dyna Systems within their assigned territories for eighteen months after termination. Zoch was assigned to sell in Geary, Morris, Clay, Washington, Saline, Ottawa, Cloud, Republic Jewell, Mitchell, Lincoln, Ellsworth, Russell, Osborne, Smith, Ellis, Rooks, and Phillips counties in Kansas. Richardson was assigned Nemaha, Brown, Jackson, Atchison, Jefferson, Leavenworth, and Doniphan counties. Johnson agreed that he would not perform similar services within areas he served for plaintiff, for eighteen months after leaving plaintiff's employ.

Nondisclosure covenants were included in the contracts whereby Johnson, Zoch and Richardson agreed not to disclose or use certain information deemed confidential by Dyna Systems. This confidential information includes plaintiff's costs, lists of customers and customer information such as purchasing habits and idiosyncrasies, internal purchasing procedures, sales presentation books, customer route books, commission lists, names and locations of salesmen, sales sheets, and price lists.

Since their employment with RAMPCO, Zoch and Richardson have been soliciting and selling to those customers they sold to for Dyna in their previously assigned territories. Johnson has been performing services for RAMPCO similar to those he performed for Dyna Systems within the areas he covered for Dyna Systems.

RAMPCO and its president, Theodore Jarman, although aware of the above post-employment restrictions, induced Zoch, Richardson and Johnson to leave Dyna Systems, permitted them to work their former customers and former territories, and paid Richardson and Zoch "hassle" and "transition" bonuses.

RAMPCO now has information in its files and computer about Dyna Systems' customers which came to RAMPCO by reason of sales by Richardson and Zoch to former Dyna Systems' customers. Jarman, in his deposition, testified that RAMPCO planned to give this customer information, gleaned by employees in their prior employment, to any new salespersons assigned to the territories in which these customers are located.

It appears that sales representatives and sales supervisors in the fastener and related maintenance equipment business are the exclusive company contact with customers, and gain an intimate knowledge of customers' needs and specialized requirements. They acquire a special influence over the customers they solicit, sell, and service. This is a type of relationship that can be exploited when sales representatives become employees of a competitor unless the former employer can protect its legitimate business interests. For example, while employed by plaintiff Richardson and Zoch had route books which contained names, buying habits, and needs of customers. They gained intimate knowledge of plaintiff's customers, knowledge they are now exploiting for RAMPCO. Richardson and Zoch admitted that they did not return all their customer information after the termination of their employment with Dyna Systems, and were using this information in making

sales for RAMPCO. In businesses such as the fastener and related maintenance equipment business that depend on customer servicing, goodwill is paramount and it chiefly attaches to the salesperson rather than the company or the product.

Dyna Systems has made few sales within the territories formerly assigned to Richardson and Zoch and has had difficulty in hiring salespersons for these territories because of the presence of former Dyna Systems salespersons at work in the territories for RAMPCO.

We are satisfied that plaintiff has been and is being harmed by the activities of Johnson, Richardson, and Zoch in violation of their contracts with Dyna Systems, and that Jarman and RAMPCO have encouraged these violations and benefited from them. We find further that the fact RAMPCO had a deficit net worth of approximately $500,000 at May 31, 1979, means that the harm occurring to plaintiff is irreparable from the standpoint of money damages. *Atlantic Wool Combing Co. v. Fibre Corp.,* 306 F.Supp. 69 (D.R.I.1969). We believe that the harm to plaintiff outweighs any harm to defendants who undertook their present activities aware of the restrictive covenants involved in this case.

We find that there is a reasonable probability that plaintiff will succeed on the merits. In this we rely heavily on a recent Kansas case, *Eastern Distributing Co., Inc. v. Flynn,* 222 Kan. 666, 567 P.2d 1371 (1977). The defendant in that case had been a sales representative for the plaintiff under a contract including post-employment territorial restrictions. The trial court upheld the restrictions making only minor modifications. The reasoning of the Supreme Court in affirming the lower court's action seems peculiarly applicable here:

"It is has become well-established that a noncompetition clause is valid if it is ancillary to any lawful contract, but it is subject to the test of reasonableness of the covenant and whether it is inimical to the public welfare. (*H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 493 P.2d 205; *Foltz v. Struxness,* 168 Kan. 714, 215 P.2d

133; and *John Lucas & Co. v. Evans,* 141 Kan. 57, 40 P.2d 359.) With respect to time and space provisions in such covenants we adopted what was denominated the doctrine of reasonableness in *Foltz* and explained that the real test is never whether there is any restraint, but always whether the restraint is reasonable under the facts and circumstances of the particular case. . . .

.    .    .    .    .

"It is well-settled law that the mere desire to prevent ordinary competition does not qualify as a legitimate interest of an employer and a restrictive covenant is unreasonable if the real object is merely to avoid such ordinary competition. (43 A.L.R.2d, Anno., Employee—Restrictive Covenant—Area, § 23[a] and [b], pp. 94, 159–162.) However, it is also a well-recognized principle that 'customer contacts' is a legitimate interest to be protected by an employee. On this point the author of the annotation referred to says:

"'The most frequent and probably also the most important of the employer's legitimate interests sought to be protected through the enforcement of a restrictive covenant not to compete is the customer contacts which the employer was able to develop for his business. Protection of this asset against appropriation by an employee is recognized everywhere as an important legitimate interest of the employer.' (p. 117.)

It is clear from the import of the language of the instant contract that 'customer contacts' was the principal incident which Eastern intended to protect."

We, of course, make no finding on the merits, but only a finding of the *probability* of plaintiff's success.

Finally, we are convinced that the public interest will not be harmed by enjoining defendants' activities.

All factors having been considered, the court concludes that plaintiff's motion for a preliminary injunction should be sustained.

· IT IS THEREFORE ORDERED that defendant Johnson be and hereby is enjoined until further order of this court, as follows:

(1) from selling, offering for sale, or soliciting the sale of products similar to plaintiff's products to any account he learned of, became familiar with or worked with while employed by plaintiff;

(2) from training, acting as a sales trainer, assisting and supervising salesmen or performing similar services as those performed for plaintiff in or within thirty (30) miles of Irving, Texas and%n61or in or within thirty (30) miles of any city, town or village where he performed sales management duties for plaintiff;

(3) from directly or indirectly diverting, taking away, attempting to divert or take away customers of plaintiff based upon customer information obtained from a former or present sales representative of plaintiff.

IT IS FURTHER ORDERED that defendant Richardson be and hereby is enjoined until further order of this court, as follows:

(1) from selling, offering for sale, or soliciting the sale of products similar to plaintiff's products within the territory of Nemaha, Brown, Jackson, Atchison, Jefferson, Leavenworth, Wyandotte, and Doniphan Counties, State of Kansas, and in any other territory where Richardson sold products for plaintiff;

(2) from directly or indirectly diverting, taking away or attempting to take away any of plaintiff's customers or the business or patronage of such customers with these territories, and any other territory where Richardson sold products for plaintiff, in regard to the sale of products similar to plaintiff's products;

(3) from directly or indirectly engaging in or entering the employment of or acting as a sales agent or broker for products similar to plaintiff's products within these territories, and any other territory where Richardson sold products for plaintiff.

IT IS FURTHER ORDERED that defendant Zoch be and hereby is enjoined until further order of this court, as follows:

(1) from selling, offering for sale, or soliciting the sale of products similar to plaintiff's products within the territory of Geary, Morris, Clay, Washington, Saline, Ottawa, Cloud, Republic, Jewell, Mitchell, Lincoln, Ellsworth, Russell, Osborne, Smith, Ellis, Rooks and Phillips Counties, State of Kansas, and in any other territory where Zoch sold products for plaintiff;

(2) from directly or indirectly diverting, taking away or attempting to take away any of plaintiff's customers or the business or patronage of such customers within these territories, and any other territory where Zoch sold products for plaintiff, in regard to the sale of products similar to plaintiff's products;

(3) from directly or indirectly engaging in or entering the employment of or acting as a sales agent or broker for products similar to plaintiff's products within these territories, and any other territory where Zoch sold products for plaintiff.

IT IS FURTHER ORDERED that defendants Johnson, Richardson, Zoch, RAMPCO and Jarman be and hereby are enjoined until further order of the court from directly or indirectly, by any means or device whatsoever:

(1) from diverting, taking away or attempting to take away plaintiff's customers learned about while Johnson, Richardson and Zoch, or any of them, were employed by plaintiff, and from exchanging or otherwise utilizing customer lists, sales methods or other confidential information of plaintiff learned about through these three former Dyna Systems employees;

(2) from utilizing in any way any confidential customer lists, sales methods, or other confidential information of plaintiff which are or have been in the knowledge or possession of Johnson, Richardson and Zoch as the result of their former employment with plaintiff.

IT IS FURTHER ORDERED that defendants Johnson, Richardson and Zoch be and hereby are enjoined until further order of the court from directly or indirectly using for their own benefit or for the benefit

of any other person, including Jarman and RAMPCO, or divulging to any other person, excluding their attorney of record, including Jarman and RAMPCO, any confidential information they may have or may have learned about while employed by plaintiff, or secured or learned from any of the plaintiff's employees or former employees. Jarman and RAMPCO, their respective officers, directors, agents, servants, employees, and all other persons in concert or in participation with them, or acting for or on their behalf, are jointly and severally enjoined until further order of the court from seeking, accepting or using confidential information from the individual defendants or any of them.

Defendants Johnson, Richardson and Zoch are hereby ordered to return to plaintiff forthwith all property of plaintiff in their possession or control, if any, including but not limited to, presentation books, sales manuals, commission lists, price lists, customer lists or copies thereof, route book sheets, daily reports, customer information in any form or copies thereof, labels, order pads reflecting orders sold by the defendants when employed by plaintiff, and defendants Jarman and RAMPCO are hereby ordered to return to plaintiff forthwith all such property of plaintiff in their possession and control, if any.

IT IS FURTHER ORDERED that plaintiff give bond to be approved by the court in the amount of $150,000.00 conditioned that plaintiff abide by the order of this court and pay all damages and costs that may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.